$150.00 

UNITED STATES DISTRICT COURT
**EASTERN DISTRICT OF PENNSYLVANIA**
------------------------------x
UNITED STATES OF AMERICA ex rel. PRITSKER,

              Plaintiffs

-against-

SODEXHO, INC., ARAMARK CORPORATION and
    COMPASS GROUP USA, INC.
      (d/b/a CHARTWELLS)

              Defendants.
------------------------------x

Civil Action No. 03-6003

**FALSE CLAIMS ACT**
**COMPLAINT**

JURY TRIAL DEMANDED

FILED UNDER SEAL

31 U.S.C. § 3730(b)(2)

FILED OCT 30 2003
MICHAEL E. KUNZ, Clerk
By _____ Dep. Clerk

    Plaintiff, the UNITED STATES OF AMERICA, *ex rel.* ROBERT PRITSKER ("Plaintiff" or "Relator"), as and for its Complaint against Defendants SODEXHO, INC., ARAMARK CORPORATION, and COMPASS GROUP USA, INC. (D/B/A CHARTWELLS) (collectively, "Defendants"), alleges as follows:

### NATURE OF ACTION

    1. Plaintiff brings this action to recover damages, treble damages, and civil penalties on behalf of the United States of America ("United States") under the False Claims Act, 31 U.S.C. §§ 3729-33. The damages arise from $530,000,000 of false claims and statements made through school district grantees under the United States' National School Lunch Program ("NSLP") and from causing those grantees to present such false claims to the United States. Defendants, food service management companies ("FSMCs") made and/or caused to be made the false claims and statements, which continue to this day and originated when Defendants issued monthly invoices pursuant to which Defendants sought reimbursement for managing the food service of NSLP

1

sponsoring school districts ("school food authorities" or "SFAs"). The false claims alleged here arose in the past ten years between 1993 and this present day in 2003 under cost reimbursable contracts between the SFAs and FSMCs, as a result of the FSMCs seeking reimbursement for costs they incurred in buying the food and supplies needed to feed the children attending the SFA schools. One such SFA is in the Eastern District of Pennsylvania.

2. Under the NSLP, 42 U.S.C. §§1753(b) (2), 1756, and 1759a payments are made by the United States Department of Agriculture ("USDA") to state agencies ("SAs") for every meal ("program meal") served in the SFAs that meets the nutritional requirements of the NSLP. The SAs distribute those USDA payments to the SFAs, based upon each SFA's monthly report of program meals served. The meal counts are maintained by Defendants, the food service managers, and submitted to the SFAs for signature and submission to the SA on a form prescribed by 7 CFR § 210.8, a section of the NSLP regulations at 7 CFR § 210. The signatory on the form certifies that the claim is in accordance with the terms of the existing Agreement. According to 7 CFR §210.9, "[T]he Agreement shall contain a statement to the effect that the "School Food Authority and participating schools under its jurisdiction shall comply with all the provisions of 7 CFR parts 210 and 245.'" The Defendant FSMCs' form cost reimbursable contracts all have essentially the same provision regarding their compliance with the law concerned with the NSLP – they agree to comply with those same NSLP regulations set out in 7 CFR §§ 210, 245, *et seq.*  7 CFR§210.16 is entitled **Food service management companies.** Therein, the SFAs are regulated in terms of the contracts they may enter into with FSMCs. 7CFR§210.16(c) states, "Contracts. Contracts that permit all income and

2

expenses to accrue to the food service management company and 'cost-plus-a – percentage-of-cost' ......contracts are prohibited."

3. The FSMCs' claims for reimbursement are spelled out in their cost reimbursable contracts with the SFAs. The form cost reimbursable contracts of both Sodexho and Aramark, used with essentially every SFA they manage, called for those two FSMCs to retain all rebates, trade allowances, and discounts made available to them by national manufacturers, suppliers, and distributors, as a result of their volume purchases. (All three Defendants are multi-billion dollar companies making multi-billion dollar purchases annually under national buying contracts.) Chartwells' form cost reimbursable contract, essentially used with every SFA it manages, is silent on the question of retention of national rebates.

4. The practice of rebates, discounts, allowances, etc. being returned to food industry large-volume buyers is a common one often referred to in the food industry as "Billbacks," as in the buyer billing back to the manufacturer, distributor, or supplier the amount of rebate commensurate with achieving a volume of purchases articulated in buying contracts entered into by companies such as Defendants.

5. Billbacks for purchases made by FSMCs on behalf of SFAs create a prohibited form of contract – the cost-plus-a-percentage-of-cost contract. Billbacks are markups worked backwards: were an FSMC with a cost of $8 to seek reimbursement of $10 for the same item from an SFA, that $2 markup defines the prohibited cost-plus-a-percentage-of-cost contract. An FSMC's paying a manufacturer $10, billing the SFA $10, only to billback the manufacturer for the $2 volume-purchaser rebate results in the

exact same prohibited cost-plus-a-percentage-of-cost contract. The $2 is a percentage of cost in either case.

6. The prohibition against cost-plus-a-percentage-of-cost contracts in 7 CFR§210.16(c) demonstrates the NSLP regulations' consistency with 7CFR§3016 "Uniform Administrative Requirements for Grants and Cooperative Agreements to State and Local Governments." 7CFR § 3016.22 (b) states in part, "…For each kind of organization, there is a set of Federal principles for determining allowable costs.… For the costs of a state, local, or Indian tribal government…" the regulation applies principles in OMB Circular A-87, which state at Attachment A § A(3) that the principles governing allowable costs in cost reimbursable contracts" will be applied by all Federal agencies in determining costs incurred by governmental units [or grantees] under Federal awards.

7. Under Circular A-87, "costs" must be "the net of all applicable credits," at Attachment A § C(1)(i), and meet "[m]arket prices for comparable goods or services," at Attachment A § C(2)(c). "Purchases should be charged at their actual prices after deducting all cash discounts, trade discounts, rebates, and allowances received," at Attachment B #29

8. 7CFR§210.16(c) also reflects consistency with the regulation in 7CFR§ 3016.36 (4). 7CFR§3016.36(4) states, "Procurement. (4) The cost plus a percentage of cost ………method(s)- of contracting shall not be used."

4

9. Relator estimates that, during the 1999-2000-school year, where cost reimbursable contracts were involved, Sodexho purchased $117 million of food and supplies on behalf of the SFAs it managed, Aramark $172 million, and Chartwells $90 million. (In 1999-2000 the Defendants did enter into approximately 110 fixed-price/fixed-price-per-meal-served contracts with SFAs, where their retention of Billbacks is entirely consistent with that NSLP permitted form of contract.) The Billbacks retained in the cost reimbursable contracts are estimated at 14% of such purchases. The $53 million Billback result (14% x $379 million in total purchases) has been multiplied by ten years to equal the $530 million damage claim. While the Defendants' business with SFAs was growing steadily through the 1993 to September 1, 1999 period, using the 1999-2000 reference year retained Billback amount as an average retained Billback for all ten years is justified by the fact that the Defendants' SFA business has increased considerably since the reference year and that reference year represents a reasonable average of the ten years.

10. Payment by the USDA pursuant to the SFA claims for program meals served had the result of honoring the very form of SFA-FSMC contract the USDA regulations said it would not honor. The Defendants made it very clear in their contracts that they were aware of 7CFR§ 210, particularly as it relates to FSMCs in 7CFR§210.16, yet they knowingly, willingly, and intentionally became a party to such a prohibited contract for their sole benefit since they retained the Billbacks, and to the detriment of a USDA program established "to safeguard the health and well-being of the Nation's children and to encourage the domestic consumption of nutritious agricultural commodities and other

food by assisting the States, through grants-in-aid [to] nonprofit school lunch programs." 7 CFR§ 210.1, *et seq.* and 42 U.S.C.§1751, *et seq.*

## JURISDICTION AND VENUE

11. As required by 31 U.S.C. 3730(b)(2), the Plaintiff/Relator herein, has provided to the Attorney General of the United States and to the United States Attorney for the Eastern District of Pennsylvania a statement of material evidence and known information in support of this Complaint ("Disclosure Statement"). Relator's Disclosure Statement contains confidential information entitled to protection as privileged attorney-client communications and work product submitted to the Attorney General and United States Attorney.

12. This action arises under the False Claims Act, 31 U.S.C. §§ 3729 *et seq.* ("FCA" or "Act"). This Court has jurisdiction over this case pursuant to 31 U.S.C. §§ 3732(a) and 3730(b). This Court also has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1345, and has supplemental jurisdiction over any common law and equitable causes of action pursuant to 28 U.S.C. § 1367(a). Under the *qui tam* provisions of the Act, private persons such as the Relator may enforce the Act on behalf of the United States to recover amounts paid by the United States or a grantee thereof pursuant to a false or fraudulent claim or statement.

13. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and (c), as at all times relevant hereto certain of the Defendants transacted business in this District.

## THE PARTIES

### Relator

14. Robert Pritsker ("Relator" or "Plaintiff"), age 62, is a non-practicing lawyer with an MBA. For many years, he was a well-established restaurateur in New York City, and continues to have a keen interest in the food service industry. Mr. Pritsker has expertise in all aspects of food management, including procurement, cost-of-goods, food preparation, costs-per-meal served, nutrition, etc.

15. Relator lives with his family in Weston, Connecticut. His 7-year old twin boys attend the local public elementary school. Because he began to question the value of lunches being served to students throughout his school district, Mr. Pritsker undertook an in-depth study that caused him to conclude that his SFA was paying its FSMC, Sodexho, for food products and supplies, amounts that far exceeded Sodexho's net cost of procuring such goods, in violation of federal law related to the NSLP.

16. What Plaintiff/Relator began to uncover as to the Weston School District, led him into a large-scale investigation, wherein he interviewed approximately 50 individuals with first-hand knowledge of the allegations made in the accompanying Disclosure Statement. He extensively analyzed financial reports and statements and reviewed dozens of FSMC contracts and hundreds of pages of other relevant materials.

### Defendants

17. The Defendants are: Sodexho, Inc. ("Sodexho"), a wholly-owned subsidiary of Sodexho Alliance S.A., a French company, Aramark Corporation ("Aramark") and Compass Group USA, Inc., d/b/a Chartwells ("Chartwells").

7

18.  Sodexho (headquartered in Gaithersburg, MD) and Aramark (headquartered in Philadelphia, PA) trade on the New York Stock Exchange; Chartwells is the "dba" for Compass Group USA, Inc., a division of Compass Group, a British company trading on the London Stock Exchange.  The three Defendant FSMCs are believed to control 45% or more of the FSMC-managed SFAs.

## NSLP CASH REIMBURSEMENTS TO SFAs

19.  The Secretary of Agriculture allots NSLP funds to each state, taking into consideration states having lower than average income per capita.  The NSLP employs income guidelines based upon poverty level and family size to determine the number of students eligible for free and reduced price lunches under NSLP. 42 U.S.C.§§ 1756, 1758(b), 7CFR§245 *et seq*.  State agencies receiving such federal funds are required to make these funds available to reimburse or make advance payments to SFAs based upon their program meals served.  7 CFR §210.6, .7, .8.  For the 2002-2003 school year, the Federal Government paid $0.20, $1.74 and $2.14/ program meal served to students who, respectively, pay the full price charged by the SFA, a reduced price of $0.40, or nothing. In the 1999-2000 reference-year, the NSLP cash grants to SFAs were $5.6 billion.

20.  1648 of the total 19,300 US school districts were managed by FSMCs in the 1999-2000-reference year.  Defendants managed 746 SFAs of those 1648 or about 45 % of FSMC-managed SFAs (false claims by the FSMCs managing the other 55% of SFAs may also exist) and, therefore, 3.8% of all US school districts' food service operations. The $53 million in Defendants' false claims in 1999-2000 represents 25% of the NSLP

grant money of $213 million paid to the 3.8% of US school districts whose food service was managed by Defendants.

21. Federal regulations envision the type of investigative activity undertaken by Plaintiff/Relator: "School food authorities shall promote activities to involve . . . parents," including menu planning, nutrition practices and enhancement of the program. 7 CFR § 210.16(a)(8).

## FACTS COMMON TO ALL COUNTS

22. The United States has sustained actual damages to the extent it, or its grantees, paid out federal funds received by Defendants that the US or its grantees would not have paid because of Billbacks received by Defendants.

23. The three Defendant FSMCs (and their predecessor companies for whose acts Defendants are liable), knowingly and/or with reckless disregard for applicable federal law, made and/or caused to be made false claims equivalent to the amounts by which their reimbursement claims exceeded the net costs of FSMC purchases made on behalf of SFAs under cost reimbursable contracts.

24. The Defendants' false claims have occurred for a minimum of ten years.

25. The per year average over ten years of the aforesaid false claims by the three named Defendant FSMCs are being stated at $53 million per year, although an audit of the FSMCs' books is necessary to confirm this estimate.

26. Each Defendant made, on average, 1 monthly claim for reimbursement for 10 months of each school year per each SFA client. The three Defendants serviced an average of 750 SFAs for the 1993 to 2003 ten-year period. The incidence of false claims to which penalties may attach are therefore 75,000.

27. A 1986 amendment to 31 U.S.C.§ 3729 of the False Claims Act is directly applicable to the charges of this Complaint and provides in pertinent part:

> **(c) Claim defined**. For purposes of this section, claim includes any request or demand, whether under a contract or otherwise, for money or property which is made to a contractor, **grantee**, or other recipient if the United States Government provides any portion of the money or property which is requested or demanded, or if the Government will reimburse such contractor, grantee, or other recipient for any portion of the money or property which is requested or demanded. [emphasis added]

This statutory amendment enabled the United States to use the False Claims Act to reach fraud perpetrated on federal grantees, as recipients of federal funds.

28. In managing SFAs' food service, the Defendants have, as a matter of corporate policy, knowingly and/or recklessly disregarded the law and the clear legal boundaries that existed between practices where Billback retention might be appropriate and practices where Billback retention gives rise to false claims.

## COUNT 1

**(False Claims Act: Presentation of False Claims and/or causing the presentation of False Claims to be made)**

29. Plaintiff/Relator re-alleges and incorporates the allegations of paragraphs 1 through 28 as though fully set forth herein.

30. Defendants knowingly made false representations and claims and/or caused the presentation of false claims to the United States in order to obtain reimbursement from the United States to which they otherwise would not have been entitled.

31. Defendants' course of conduct violated the False Claims Act, 31 U.S.C. §§ 3729 *et seq.* By reason of Defendants' actions, the United States suffered damages in an amount to be determined at trial, and is entitled to civil penalties of $5,000 to $11,000 for each violation and treble damages under the False Claims Act.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff/Relator respectfully requests this Court to enter judgment against Defendants, as follows:

(a) That the United States be awarded damages in the amount of civil penalties of $5,000 to $11,000 for each and every false claim that Defendants presented to the United States or its grantees and three times the total damages sustained by the United States because of the false claims and fraud alleged within this Complaint, as the False Claims Act, 31 U.S.C. §§ 3729 *et seq.* provides;

(b) That pre- and post-judgment interest be awarded, along with reasonable attorneys' fees, costs and expenses which Plaintiff/Relator necessarily incurred in bringing and prosecuting this case;

(c) That the Court grant permanent injunctive relief to prevent any recurrence of the violation of the False Claims Act for which redress is sought in this Complaint;

11

(d) That Relator be awarded the maximum amount allowed to him pursuant to the False Claims Act; and

(e) That this Court award such other and further relief as it deems proper.

### DEMAND FOR JURY TRIAL

Plaintiff/Relator demands a trial by jury as to all issues triable by a jury.

Dated: October 24, 2003

Respectfully submitted,

Robert Pritsker
32 Steephill Road
Weston, CT 06883
(203) 341-8626 phone
(203) 341-8626 fax
pritsker@sbcglobal.net e-mail

Robert Pritsker, Pro Se

**FILED**
OCT 30 2003
MICHAEL E. KUNZ, Clerk
By _____ Dep. Clerk